24191

The STATE, Respondent v. Jeffrey Allen CHAPMAN, Appellant.
(454 S.E. (2d) 317)

Supreme Court

*Asst. Appellate Defender M. Anne Pearce*, of *S.C. Office of Appellate Defense*, Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zalenka*, and *Asst. Attys. Gen. Wilbur E. Johnson* and *Rakale Buchanan Smith*, Columbia, and *Solicitor Thomas E. Pope*, York, *for respondent.*

Heard Oct. 4, 1994.

Decided Feb. 13, 1995; Reh. Den. Mar. 8, 1995.

WALLER, Justice:

Jeffrey Allen Chapman was convicted of third-degree criminal sexual conduct and sentenced to ten years imprisonment. We remand pursuant to *State v. Jones*, 298 S.C. 54, 358 S.E. (2d) 701 (1987).

## *FACTS*

During jury selection, the State exercised peremptory challenges against four white male jurors. In response, Chapman, who is also a white male, made a *Batson*[1] motion and attempted to establish a *prima facie* violation:

---

[1] *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. (2d) 69 (1986).

[Defense counsel]: I would make a motion under the Batson versus Kentucky with regard to the strikes that were made by the Solicitor's office. I believe that the Solicitor's office struck all the white males that were, virtually all the white males, defense and the State, and your Honor, I would submit at this time that we had the right to have a Batson inquiry as to why they stuck [sic] white males. All the while [sic] males were similarly situated to terms age to our client and we would ask the Court to inquire.

[The Court]: How about that solicitor?

[Solicitor]: Your Honor, I would request to be a little specific. There were six white males outside the jury. I don't exactly know.

[The Court]: Yes, sir, I agree.

[Defense counsel]: You Honor, if I might. There were four excused all the exemplary challenges and struck the following jurors number 72, number 2, number 96, and number 43.

[The Court]: Yes, sir.

[Defense counsel]: All of those being white males.

[The Court]: Didn't you strike a white male too?

[Defense counsel]: Your Honor, we're not taking, we struck, we struck as Your Honor can see from the panel, white females, black females, white males.

[The Court]: Struck mainly white females. No, sir, I don't think there is any Batson issue here really.

[Defense counsel]: I understand Your Honor that the ruling, I think what we have gender based discrimination in the use of exemplary strikes as they came down. We would have taken those jurors.

[The Court]: You have in on the record. All right. Good. Thank you.

The solicitor exercised four peremptory strikes, striking four white males. Six white males served on the jury.

## ISSUE

Did the trial court err in denying Chapman's request for a Batson hearing?

## DISCUSSION

In *Batson v. Kentucky, supra,* the United States Supreme Court held that a state denies a black defendant equal protection when it challenges potential black jurors solely due to their race or on the assumption that black jurors as a group will be unable to impartially consider the state's case against a black defendant. *Batson* required a defendant to initially show that he is a member of a racial group capable of being singled out for differential treatment. It further held that 1) a defendant must establish á prima facie case of purposeful discrimination. A prima facie case is established by a showing by the defendant that he is a member of a cognizable racial group and that the prosecutor had exercised peremptory challenges to remove members of the defendant's race from the venire panel; 2) a defendant is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate; and 3) a defendant must show that facts and relevant circumstances raise an inference that the prosecutor used peremptory strikes to exclude venirepersons on the account of their race.

The United States Supreme Court subsequently found in *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, L.Ed (2d) 411 (1991), that *Batson* was designed to serve multiple ends, only one of which was to protect individual defendants from discrimination in the selection of jurors. The *Powers* Court recognized that *Batson* also provided each individual juror equal protection rights not to be excluded from the jury. Therefore, the Court reasoned that in a trial of a white criminal defendant, a prosecutor is prohibited from excluding black jurors based on race.

The *Batson* rationale was further extended in *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed (2d) 660 (1991), so that in a civil case, private litigants could not exercise their peremptory strikes in a racially discriminatory manner. *Edmonson* presented the United States Supreme Court its first opportunity to rule upon discriminatory peremptory challenges exercised by a party other than a prosecutor. The *Edmonson* Court found that a private party's exercise of peremptory challenges constituted state action.

The Supreme Court next held that a criminal defendant's use of peremptory challenges was state action. Therefore, a criminal *defendant's* racially discriminatory exercise of peremptory challenges inflicts the harms addressed by *Batson. Georgia v. McCollum,* — U.S. —, 112 S.Ct. 2348, 120 L.Ed. (2d) 33 (1992). Individual jurors' rights to nondiscriminatory jury selection were further strengthened by the Supreme Court's decision in *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. —, 114 S.Ct. 1419, 128 L.Ed. (2d) 89 (1994). *J.E.B.* found that discrimination in jury selection, whether based on race or on gender, cause harm to the litigants, the community, and the individual jurors who are wrongfully excluded from participation in the judicial process. Consequently, gender, like race, was an unconstitutional proxy for juror competence and impartiality.

This Court has previously held that for a defendant to establish a *prima facie* case of discrimination, he must show: 1) that he is a member of a cognizable racial group; 2) that the opposing party has exercised peremptory challenges to remove members of his race from the jury; and 3) that these facts and other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude venirepersons from the jury on account of their race. *State v. Oglesby,* 298 S.C. 279, 379 S.E. (2d) 891 (1989).

Currently, trial judges are given the discretion to determine whether the defendant has made out a *prima facie* showing of purposeful discrimination. *State v. Jones,* 293 S.C. 54, 358 S.E. (2d) 701 (1987). The Court in *Jones* also recommended that to ensure consistency by removing any doubt about when a *Batson* hearing should be conducted, trial courts should hold *Batson* hearings 1) whenever the defendant requests a hearing; 2) the defendant is a member of a cognizable racial group; and 3) the prosecutor exercises peremptory challenges to remove members of defendant's race from the venire.

Considering the United States Supreme Court's development of the issue, the *Jones* criterion as to when to hold a *Batson* hearing is outdated. However, this Court's concern about ensuring consistency is still legitimate. Therefore, we require that trial courts hold *Batson* hearings

whenever one is requested.[2] In our opinion, requesting a *Batson* hearing in effect sets out a *prima facie* case of discrimination. We note that under the guidelines as set forth by the U.S. Supreme Court, any person regardless of race or gender may set forth a valid *Batson* claim. Likewise, the striking of any juror can raise the inference of race and/or gender-based discrimination. As a result, past distinctions of whether one is a member of a cognizable group are no longer applicable.

We find that the trial judge erred in the present case by not holding a *Batson* hearing. Accordingly, the matter is remanded, pursuant to *Jones, supra,* for the trial court to conduct a *Batson* hearing. If, after the hearing, the court determines the solicitor had a race/gender neutral reason for exercising his peremptory challenges, Chapman's conviction shall stand. If the judge is not satisfied with the solicitor's reason, Chapman shall be granted a new trial.

Remanded.

CHANDLER, C.J., and FINNEY, TOAL and MOORE, JJ., concur.